UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOSHUA L. T.,

                    Plaintiff,

v.                                                          5:23-CV-0082
                                                            (GTS)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

APPEARANCES:                                  OF COUNSEL:

OLINSKY LAW GROUP                             HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
250 South Clinton Street, Suite 210
Syracuse, NY 13202

SOCIAL SECURITY ADMINISTRATION                KRISTINA D. COHN, ESQ.
OFFICE OF GENERAL COUNSEL                      Special Assistant U.S. Attorney
  Counsel for Defendant
6401 Security Boulevard
Baltimore, MD 21235

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

        Currently before the Court, in this action filed by Joshua L. T. ("Plaintiff") against the

Commissioner of Social Security ("Defendant") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3),

is Plaintiff's request for review of a final decision of the Commissioner, which has been

construed as if the parties had filed competing motions for judgment on the pleadings.[1]  (Dkt.

---

[1]        Pursuant to the Supplemental Rules for Social Security Actions Under 42 U.S.C. §
405(g), an action is presented for decision by the parties' submission of briefs according to the
specified procedure.  Pursuant to this Court's General Order 18, "[t]he assigned judge will treat
the proceedings as if both parties had accompanied their briefs with a motion for judgment on the
pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure."  Regardless of the

Nos. 14, 17, 18.)  For the reasons set forth below, the Court grants Defendant's motion for judgment on the pleadings, denies Plaintiff's motion for judgment on the pleadings, and dismisses Plaintiff's Complaint.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1992, making him 27 years old at his application filing date and 29 years old at the date of the ALJ's decision.  (T. 10.)[2]  In his application, Plaintiff alleged that he is disabled due to attention deficit hyperactivity disorder ("ADHD"), schizophrenia, bipolar disorder, and depression.  (T. 57.)  In terms of education, Plaintiff has reported completing the tenth grade.  (T. 36.)

### B.    Procedural History

On July 29, 2020, Plaintiff applied for Supplemental Security Income.  (T. 14.)  This application was initially denied on October 27, 2020, and upon reconsideration on April 26, 2021, after which Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  (*Id.*)  Plaintiff appeared at a hearing before ALJ Gretchen Mary Greisler, on February 15, 2022.  (T. 14, 31.)  On April 20, 2022, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 14-24.)  On November 29, 2022, the Appeals

---

procedural mechanism under which the parties' briefs are construed, the Court reviews such actions "as one for review of the administrative record," as required by the Federal Supplemental Rules for Social Security Actions.

[2]     The Administrative Transcript is found at Dkt. No. 9.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

Council denied review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-3.)

###    C.    The ALJ's Decision

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law.  (T. 9-14.)  First, the ALJ found that Plaintiff did not engage in substantial gainful employment at any point since his application filing date of July 29, 2020, although he did engage in some temporary work that the ALJ classified as an unsuccessful work attempt.  (T. 16.)

Second, the ALJ found that Plaintiff had provided evidence to establish multiple severe medically determinable impairments, namely posttraumatic stress disorder ("PTSD"), depressive disorder, anxiety disorder, and unspecified bipolar disorder, although his documented left ankle injury and bilateral pes planus of the feet did not meet the requisite level of severity.  (T. 17.)

Third, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled any of the criteria for medical disability in the Agency's Listing of Impairments after specifically considering Listings 12.04, 12.06, and 12.15.

Fourth, the ALJ found that Plaintiff retained a residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but that he was limited as follows: Plaintiff can perform simple, routine tasks at a consistent, goal-oriented pace, but not at a fast production-rate pace such as would be experienced in assembly line-type work; he can tolerate ordinary supervision and occasional contact with coworkers that does not require sharing of job tasks or close coordination with others; he can tolerate incidental interaction with the public and cannot work around crowds of people; and he can make simple decisions and tolerate occasional minor changes.  (T. 19.)

3

Fifth, the ALJ found that Plaintiff is unable to perform any of his past relevant work as a kitchen helper or conveyer belt packer sorter.  (T. 22.)

Sixth, the ALJ found that Plaintiff could instead perform other work that exists in significant numbers in the national economy, citing as representative positions those of retail stocker, industrial cleaner, and garment sorter.  (T. 23.)  Accordingly, the ALJ found that Plaintiff had not been disabled at any point between July 29, 2020, and the date of the decision.  (*Id.*)

### D.     The Parties' Briefing on Plaintiff's Appeal

#### 1.     Plaintiff's Brief

Generally, in his brief, Plaintiff makes two arguments, both of which relate to the ALJ's assessment of the medical opinion evidence.  (Dkt. No. 14.)  First, Plaintiff argues that the ALJ erred in assessing the opinions provided by the non-examining state agency sources regarding his mental functioning in that she (a) failed to explain how she reconciled the fact that those sources found ADHD to be a severe impairment with her own failure to even address that impairment in her decision, (b) failed to reconcile her finding that Plaintiff's subjective reports of symptoms were not wholly consistent with the evidence in the record with the findings of those sources that his reports of symptoms were substantiated, (c) failed to properly and appropriately address the supportability factor when assessing those sources' opinions, and (d) failed to address the fact that those sources' opinions are not consistent with each other in the levels of limitation they opine, and failed to explain any discrepancies between those opinions and the limitations ultimately included in the RFC finding.  (*Id.* at 10-14.)

Second, Plaintiff argues that the ALJ erred in her assessment of the opinions from the consultative examiner and his treating therapist because, although she ostensibly addressed the

required supportability and consistency factors in her analysis, she failed to explain how Plaintiff's reported daily activities, mental status examinations, and intermittent medication use is inconsistent with the limitations indicated within those sources' opinions. (*Id.* at 14-15.)

### 2.      Defendant's Brief

In opposition to Plaintiff's brief, Defendant makes four arguments. (Dkt. No. 17.) First, Defendant argues that any omission of Plaintiff's purported diagnosis of ADHD from the discussion at step two of the sequential evaluation is at best harmless because there is no evidence to suggest his ADHD imposed greater limitations than were accounted for in the RFC, and that the ALJ implicitly considered any effects of that impairment by relying on the opinions of the state agency sources given that those sources based their opinions on a consideration of ADHD along with other mental health diagnoses. (*Id.* at 7-9.)

Second, Defendant argues that the ALJ properly assessed the opinions from the state agency sources because (a) she considered both the supportability and consistency factors related to those opinions and provided sufficient explanation regarding those factors, (b) there is no import to those sources' statements that the evidence was insufficient to support a decision, as it is clear they did indeed have sufficient evidence to render a determination, and (c) there was no error in the fact that the RFC did not mirror either or both of those opinions, and neither of those opinions contains limitations that can be reasonably considered to be more limiting than what was accounted for in the RFC finding. (*Id.* at 9-15.)

Third, Defendant argues that the ALJ properly found the opinions of the consultative examiner and treating therapist to be less persuasive by citing to specific reasons for such findings, and that Plaintiff's arguments to the contrary are mere disagreements with the ALJ's

weighing of the evidence that do not constitute legally sufficient grounds for remand. (*Id.* at 15-17.)

Fourth, Defendant argues that any assertion Plaintiff makes regarding the step five finding being premised on an incomplete assessment of Plaintiff's limitations is meritless because the RFC and the hypothetical question posed to the vocational expert included the extent of work-related limitations that are supported by the record evidence and no greater limitations were warranted.  (*Id.* at 17-18.)

### 3.    Plaintiff's Reply Brief

Generally, in reply to Defendant's response, Plaintiff makes three arguments.  (Dkt. No. 18.)  First, Plaintiff argues that his purpose in raising the ALJ's failure to assess ADHD was not to indicate an error at step two of the sequential evaluation as Defendant seems to assume, but rather to highlight an inconsistency between the ALJ's findings and the opinion evidence on which she purported to rely for her findings.  (*Id.* at 1-2.)

Second, Plaintiff argues that the ALJ failed to comply with the regulations by failing to properly consider the relevant factor of supportability as to the state agency sources' opinions. (*Id.* at 2-3.)  Specifically, he argues that the ALJ did not analyze the connection between those opinions and the evidence those sources considered or the explanations they provided for their opinions, a fact that he argues is obvious because the reasons the ALJ provided to explain her supportability finding as to those opinions do not reflect the rationales provided by those sources in their opinions.

Third, Plaintiff argues that the relevant error related to the state agency sources' opinions is not based on the fact their opinions did not "mirror" the RFC finding, but rather that the ALJ

failed to explain her reasons for deviating from those opinions (in the various respects she did) despite finding them to be persuasive.  (*Id.* at 4-5.)

## II.     APPLICABLE LEGAL STANDARDS

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord*, *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by

substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord*, *McIntyre v. Colvin*, 758 F.3d 146,

150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA

will not review the claim further."  *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

## III.   ANALYSIS

### A.    Whether the ALJ Properly and Adequately Assessed the Opinion Evidence

After carefully considering the matter, the Court answers this question in the affirmative

for the reasons stated in Defendant's brief.  (Dkt. No. 18, at 17.)  To those reasons, the Court

adds the following analysis.

As was discussed above in Parts I.D.1 and 3, Plaintiff's arguments in this action center on

the ALJ's assessment of the medical opinion evidence.  In her decision, the ALJ found, in

relevant part, that the opinions provided by the state agency sources, Dr. P. Fernandez and Dr.

M. Momot-Baker, were persuasive and supportive of the conclusion that Plaintiff remained

capable of performing simple work with a goal-oriented pace, limited social interaction, and

occasional minor changes in the work setting because (1) those sources had an opportunity to

review the medical records, and (2) their opinions are "generally supported by the mental status

examinations in [the] record . . . as well as the dearth of formal mental health treatment notes."

(T. 20.)  The ALJ found the multiple opinions of consultative examiner Dr. Jeanne Shapiro to be

only partially persuasive to the extent her examinations support such opinions, but further found

that neither her examinations nor the record support any marked limitations Dr. Shapiro opined

because such limitations are not consistent with the mental status examinations in the record,

Plaintiff's reported activities of daily living, or the fact that he was not taking any psychotropic

medications at the time of the hearing in February 2022.  (T. 20-21.)  The ALJ similarly found

the opinion from treating therapist Bruce Jones to be unpersuasive because it is not supported by

the mental status examinations or the fact that Plaintiff is not taking any psychotropic medications.  (T. 21.)

The application for benefits in this case was filed after March 17, 2017, making it subject to the revised regulations regarding the evaluation of medical opinion evidence.  20 C.F.R. §§ 404.1520c, 416.920c.  An ALJ must articulate, in his or her determination, findings regarding how persuasive he or she finds all of the medical opinions and explain how he or she considered the supportability and consistency of those opinions.  20 C.F.R. §§ 404.1520c(b), 416.920c(b).  The ALJ also may – but is not required to – explain how he or she considered the other relevant enumerated factors related to the source's relationship with the claimant, including the length of any treatment relationship, the frequency of examinations by the source and the purpose and extent of the treatment relationship, whether the source had an examining relationship with the claimant, whether the source specializes in an area of care, and any other factors that are relevant to the persuasiveness of that source's opinion.  20 C.F.R. §§ 404.1520c(c), 416.920c(c).

### 1.    State Agency Mental Health Sources

On October 27, 2020, Dr. Fernandez opined that Plaintiff is able to understand and remember simple instructions and work-like procedures, is able to maintain adequate concentration and attention to complete work-like procedures and sustain a routine, is able to handle brief and superficial contact with co-workers and the public, and appears capable of adapting to customary changes in an ordinary work environment, although he may have difficulty coping in stressful circumstances.  (T. 65-66.)  On April 7, 2021, Dr. Momot-Baker opined that Plaintiff is capable of understanding, remembering and carrying out some detailed work procedures with an adequate level of persistence and pace, would have problems with intense and prolonged social interactions but is capable of relating to others in superficial work

interactions in a low-contact setting, and would have difficulties handling high-stress and high-demand work situations, but can adapt to changes in a routine work setting and can use appropriate judgment to make work-related decisions.  (T. 85.)

Plaintiff's argument that the ALJ failed to explain how the state agency sources' opinions were supported by their review of the medical records because she did not address the fact their opinions were inconsistent with the opinions provided by Dr. Shapiro and Mr. Jones is unavailing.  The ALJ specifically stated that she found the state agency sources' opinions to be supported by their review of the "mental status examinations," not the other opinion evidence; she therefore did not make any finding that those other opinions support the state agency sources' opinions.  As to the reason the ALJ did provide, the mental status examinations from the treatment record cited by the state agency sources indicated no abnormalities.  (T. 65-66, 84-85.) The state agency sources also cited the mental status examinations by Dr. Shapiro.  (*Id.*)  In her examination on October 15, 2020, Dr. Shapiro observed some abnormalities, including that Plaintiff had difficulty sitting still and concentrating, his motor behavior was hyperactive, he had a flat affect, his attention and concentration were impaired and he was distracted and inattentive although he was able to complete the required assessments, and he appeared to have an impaired range of intelligence with somewhat limited fund of information.  (T. 310-11.)  In her follow-up examination on March 2, 2021, Dr. Shapiro again observed some abnormalities, including that his motor behavior was restless and he appeared agitated although he was generally relaxed and comfortable if not particularly friendly; notably, his attention and concentration were observed to be good and he did not display significant emotional distress during the evaluation.  (T. 316, 321-22.)  The Court cannot say that the ALJ was unreasonable in construing (albeit implicitly, through her findings related to the state agency sources' opinions) the actual mental status

examination findings noted by Dr. Shapiro in particular as being supportive of the level of restriction the state agency sources opined, even if they interpreted such findings to be indicative of a different level of functional limitation than did Dr. Shapiro.  *See Brault*, 683 F.3d at 448 (noting that, under the substantial evidence standard, a court should "reject [the ALJ's findings of fact] only if a reasonable factfinder would have to conclude otherwise"); *Bush v. Comm'r of Soc. Sec.*, 16-CV-1007, 2017 WL 4621096, at *8 (N.D.N.Y. Oct. 13, 2017) (Suddaby, C.J.) ("[W]here the evidence is subject to more than one reasonable interpretation, this Court is bound to uphold the ALJ's interpretation.").  Notably, although the state agency sources concluded that Dr. Shapiro's opinion "is supported and consistent with other medical evidence in [the] file," they ultimately found that, in light of all of the evidence reviewed, somewhat lesser limitations were warranted.[2]  (T. 63, 65-66, 80, 84-85.)  Because the mental status examinations, even those of Dr. Shapiro, do not so clearly suggest that Plaintiff is more limited than opined by the state agency sources as to render the ALJ's supportability finding unreasonable, that finding is supported by substantial evidence.

Moreover, contrary to Plaintiff's assertions, the ALJ clearly considered the supportability factor in relation to the state agency sources' opinions by noting that they had the opportunity to review the medical records and finding that the mental status examinations in those records were consistent with their opinions, as is the noted fact that there is little treatment evidence in the record.  (T. 20.)  Having already found that the ALJ reasonably assessed the mental status

---

[2]      The Court also notes that the ALJ is not required to adopt a medical source's thoughts about the supportability or consistency of the other opinion evidence, even if that medical source has relied on an assessment of another source's opinion when coming to their own conclusions. The regulations instead place the duty to evaluate the opinion evidence and formulate an RFC finding according to an assessment of the relevant regulatory factors on the ALJ.  20 C.F.R. §§ 404.1520c, 416.920c.

examinations as being consistent with the state agency sources' opinions, the Court also finds that the ALJ did not fail to apply the correct legal standard or to appropriately address the relevant regulatory factors.

Turning to another of Plaintiff's arguments, the fact that the state agency sources concluded that Plaintiff's statements about the intensity, persistence, and limiting effect of his reported social interaction limitations were substantiated by the objective medical evidence does not require the ALJ to adopt that finding as a consequence of finding their ultimate functional opinions to be persuasive. (T. 62, 80.) As with the evaluation of the medical opinion evidence, evaluation of the supportability of the claimant's subjective reports is a finding the ALJ is required to make in the first instance. *See* SSR 16-3p. The fact that the ALJ found Plaintiff's subjective reports to be not wholly supported by the evidence does not create an inconsistency with the state agency sources' *opinions* that she was required to explain; the fact that the ALJ found those sources' assessment of functional restrictions to be persuasive does not mean she was required to agree with or adopt every statement or finding made by those sources in their reports. Moreover, the ALJ provided explanations for why she found Plaintiff's subjective reports to be inconsistent with the evidence, and Plaintiff has not challenged the merits of that finding or the proffered reasons; her discussion of those reasons sheds light on her interpretation and consideration of the state agency sources' opinions.

The Court further notes that the state agency sources did not explicitly find *all* of Plaintiff's subjective reports to be substantiated; rather, they make such finding only as to his reported social interaction limitations. (T. 62, 80.) Notably, his reports about social interaction involve being uncomfortable around other people and experiencing anger when he feels that people are judging him, as well as experiencing difficulty with being told what to do; however,

he also reported he is able to leave the house alone, go shopping, and play basketball. (T. 229, 232.)  At the hearing, he reported that, although he does not like being around groups of people and gets nervous in crowded spaces, he is able to go places when they are less busy and he enjoys grocery shopping as long as the store is not busy. (T. 41-45.)  Plaintiff does not explain why he believes the RFC limitations for occasional contact with co-workers that does not require sharing tasks or close coordination and incidental interaction with the public with no work around crowds of people fails to generally address his reported social issues. (T. 19.)  Therefore, not only was the ALJ not required to afford any deference to the state agency sources' assessment of Plaintiff's subjective reports, but also there does not appear to be any material inconsistency between generally accepting those subjective reports (at least as to social functioning) and the ALJ's RFC finding.

Further, the statement in the state agency sources' reports that a consultative examination was required because the evidence was "not sufficient to support a decision on the claim" does not suggest that either the state agency sources, or the ALJ, were required to adopt the consultative examiner's opinions as a binding assessment of Plaintiff's functioning.  All it means is that the Agency believed more evidence would be required to get an accurate full picture of Plaintiff's mental health functioning before it rendered a decision in light of the lack of documented formal treatment for his impairments.  To the extent that Plaintiff argues the ALJ was required to rely upon the consultative examiner's opinion merely because the medical evidence is otherwise sparse, that argument is misguided and not supported by authority.

Lastly, Plaintiff argues that the ALJ's finding regarding the state agency sources' opinions is not supported by substantial evidence because she failed to address the fact that those opinions are not wholly consistent with one another; he argues that the failure to explain how she

14

resolved these inconsistencies is reversable error.  However, even if the ALJ's failure to mention

differences between the two opinions when finding them both to be persuasive is error, it is

harmless.

The most notable difference between the two opinions is that Dr. Momot-Baker found

that Plaintiff can handle some detailed work-related procedures, while Dr. Fernandez limited him

to only simple instructions and work-like procedures.  (T. 65-66, 85.)  Because the ALJ limited

Plaintiff to simple, routine tasks (a finding that is generally consistent with the greater limitations

in Dr. Fernandez's opinion), the fact that the ALJ failed to explain why she did not instead adopt

the less limiting statement from Dr. Momot-Baker is clearly harmless.  *See Thomas C. W. v.

Kijakazi*, 21-CV-1198, 2023 WL 2742294, at *13 (N.D.N.Y. Mar. 31, 2023) (Nardacci, J.)

(finding any error in assessing a source's opinion was harmless where the ALJ's RFC

nonetheless accounted for the restrictions in that opinion) (collecting cases); *cf Fiducia v.

Comm'r of Soc. Sec.*, 16-CV-1317, 2017 WL 4513405, at *4 (N.D.N.Y. Oct. 10, 2017)

(Suddaby, C.J.) (noting that failure to consider or weigh an opinion at all will be considered

harmless if consideration of that opinion would not have changed the outcome) (collecting

cases).

Plaintiff also points to the fact that, although Dr. Fernandez limited Plaintiff's ability to

interact only with co-workers and the public, Dr. Momot-Baker found Plaintiff to be limited in

his contact with "others" to only superficial work interactions in a low-contact setting.  (T. 65-

66, 85.)  Although it is true that the "others" specified in Dr. Momot-Baker's opinion would

appear to include supervisors, it is not clear that his opinion contains any limitation greater than

the RFC encompasses.  Specifically, there is no obvious inconsistency between the opinion for

superficial work interactions in a low-contact setting and the RFC finding for only occasional

limited contact with co-workers and only incidental interaction with the public.  Although the ALJ did find that Plaintiff can have "ordinary" supervision, the ALJ was not unreasonable in construing this limitation to be generally consistent with the opined social limitations.  The ALJ acknowledged in the decision that Plaintiff reported having been terminated from jobs in the past due to difficulties getting along with other people, but also noted that Plaintiff had performed some work activity during the relevant period that ended because of an ankle sprain, not due to any psychological symptoms.  (T. 18, 22.)  This citation to Plaintiff's recent work activity allows the Court to glean the ALJ's implicit reasoning: that Plaintiff could tolerate ordinary supervision given that there is no evidence he had difficulty with supervision in his most recent employment.

For all of the above reasons, the Court finds no error in the ALJ's assessment of the state agency sources' opinions.[3]

### 2.    Dr. Shapiro and Mr. Jones

Plaintiff further argues that the ALJ erred in finding the opinions of Dr. Shapiro and Mr. Jones, both of which contain limitations greater than those accommodated for in the RFC finding, to be less persuasive.  Specifically, although Plaintiff acknowledges that the ALJ provided reasons for finding the greater limitations in those opinions to be inconsistent with the evidence as a whole (namely, finding they are inconsistent with the mental status examinations, his activities of daily living, and the fact he was not taking any psychotropic medications in at the time of the hearing in February 2022), he argues that the ALJ failed to explain how those

---

[3]      For many of the same reasons already discussed, the ALJ's failure to explicitly mention ADHD (to the extent that diagnosis is supported by the sparse medical record) is harmless error. The ALJ relied on the opinions of sources who explicitly considered that diagnosis when rendering their opinions, and also considered examination findings related to concentration and attention.  Plaintiff has not pointed to any evidence that would suggest any limitations resulting from that impairment were not reasonably considered and accounted for in the ALJ's findings.

activities, the mental status examinations, or his lack of medication are actually inconsistent with those sources' conclusions.  Contrary to Plaintiff's argument, however, the ALJ's findings are self-explanatory in the context of her decision.  The ALJ discussed various mental status findings from Dr. Shapiro's examinations when discussing whether Plaintiff's mental impairments met or equaled a listing, specifically as support for an overall finding that Plaintiff was at most moderately limited in the various areas related to that finding.  (T. 18.)  As part of her RFC finding, she discussed both Dr. Shapiro's examination findings and the other mental status examination findings present in the sparse treatment record, noting that, other than the various abnormalities observed by Dr. Shapiro, mental status examinations were largely normal.  (T. 21.)  She also detailed the range of daily activities Plaintiff reported throughout the record.  (T. 22.)  Reviewing all of this evidence, the Court cannot say that the ALJ's interpretation of this evidence as being inconsistent with the marked or severe limitations in the opinions of Dr. Shapiro and Mr. Jones is erroneous.  Of note, Plaintiff has not offered any argument regarding why he believes the mental status examinations, daily activities, or his history of medication usage/compliance supports the greater limitations in those opinions, other than to assert it is the "unanimous conclusion of every medical professional" that Plaintiff is more limited than found by the ALJ.  (Dkt. No. 14, at 15.)

Because it is clear from the context of the ALJ's decision why she found the various cited categories of evidence to be inconsistent with the more severe limitations opined by Dr. Shapiro and Mr. Jones, Plaintiff's argument in this respect is without merit.

**ACCORDINGLY**, it is

**ORDERED** that the Commissioner's decision is **<u>AFFIRMED</u>**; and it is further

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is

**DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 17) is

**GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: January 26, 2024
        Syracuse, New York


Glenn T. Suddaby
U.S. District Judge